**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KRISTEN MCGONIGAL, and VANESSA THEDE, | |
| Plaintiffs, | **Case No:** |
| V. | **Judge:** |
| BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT NO. 502 DUPAGE COUNTY, ILLINOIS, an Illinois body politic and corporate, COLLEGE OF DUPAGE, an Illinois municipal entity and public college, CHARLES BERNSTEIN in his official and individual capacity, ANNETTE CORRIGAN in her official and individual capacity, MAUREEN DUNNE in her official and individual capacity, CHRISTINE FENNE, in her official and individual capacity, HEIDI HOLAN, in her official and individual capacity, DAN MARKWELL in his official and individual capacity, and FRANK NAPOLITANO in his official and individual capacity, | **COMPLAINT** **Jury Trial Demanded** |
| Defendants. | |

NOW COMES the plaintiffs KRISTEN MCGONIGAL and VANESSA THEDE, by and through their attorneys, GARDINER KOCH WEISBERG & WRONA, complaining of the defendants BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT NO. 502, a body politic and corporate, COLLEGE OF DUPAGE, an Illinois municipal entity and public college, CHARLES BERNSTEIN, in his official and individual capacity, ANNETTE CORRIGAN, in her official and individual capacity, MAUREEN DUNNE, in her official and individual capacity, CHRISTINE FENNE, in her official and individual capacity, HEIDI HOLAN, in her official and individual capacity, DAN MARKWELL, in his official and

individual capacity, and FRANK NAPOLITANO in his official and individual capacity, and alleges as follows:

## NATURE OF THE ACTION

1.     This action relates to defendant College of DuPage's ("COD") wrongful termination of plaintiffs Kristen McGonigal and Vanessa Thede's (collectively, "Plaintiffs") employment with COD. Plaintiffs bring claims for wrongful discharge under Illinois common law and the Illinois Whistleblower Act, and for retaliatory discharge in violation of the 1st and 14th Amendments of the United States Constitution.

2.     Plaintiffs worked as Financial Assistance Representatives for the Office of Student Financial Assistance at COD. During their employment they learned that COD was not properly refunding unearned financial aid including but not limited to federal subsidized/unsubsidized Stafford loans, Federal Pell grants and FSEOG to the Department of Education; including the State MAP Grant, denying the federal government and State of Illinois of funds owed to it. Plaintiffs also learned that COD was not notifying students that students would need to refund to the government the money received in loans for unearned tuition, resulting in some students' loan accounts to be sent to collections.

3.     After learning of COD's illegal conduct, Plaintiffs reported the practices to other employees and managers at COD on several occasions and wrote a letter to the Higher Learning Commission, an accrediting agency that provides credentials to COD.

4.     After that reporting, Plaintiffs began to experience a hostile work environment, and were often told by supervisors and co-workers to shut up about complaints and problems in the office.

5.     This harassment only intensified after Plaintiffs raised concerns as to the hiring

process for a new Manager of the Office of Student Financial Assistance. There were substantial concerns as to whether these new director candidates would effectuate compliance.

6.      Instead of remedying this conduct, COD created pre-textual reasons to fire Plaintiffs. On January 31, 2020, COD informed Plaintiffs that it was recommending Plaintiffs' employment be terminated for violations of COD policies and informed them of their appeal rights.

7.       COD stated it terminated Plaintiffs because it claimed Plaintiffs were making crafts during work hours and used sick time to attend a craft festival, among other minor infractions. A copy of the recommendation for termination letter sent to Plaintiff Vanessa Thede is attached hereto as Exhibit A.

8.      Plaintiffs' hobby involved the use of a large Cricut Machine, which allowed them to cut and design appliques for unique t-shirt designs. COD's claim that Plaintiffs were using work time to run a side business in not accurate.

9.      Plaintiffs appealed their termination to Ellen Roberts, Interim Vice President for Administrative Affairs. In their appeal, Plaintiffs demonstrated they used sick time for legitimate medical purposes. Plaintiffs further demonstrated that they had not worked on their private hobby during work hours. Plaintiffs also pointed out the pre-textual nature of their termination because numerous employees at COD promoted and ran side businesses during work hours without repercussion, and Plaintiffs' "business" was nothing more than a hobby.

10.      Furthermore, management within the Office of Student Financial Assistance claimed they needed more help in the office at the same time they were firing Plaintiffs for minor alleged infractions that COD never addressed with Plaintiffs before, and on January 30, 2020, sought approval to hire consultants, College Aid Services, to assist the office.

11.    On January 31, 2020, COD fired Plaintiffs and on February 3, 2020, Plaintiffs appealed their termination, explaining the pre-textual nature of their termination. Copies of the appeal letters Plaintiffs sent are attached hereto as Exhibit B.

12.    On February 4, 2020, COD, through Ms. Roberts, denied Plaintiffs' appeals via email. Copies of the emails are attached hereto as Exhibit C.

## PARTIES

13.    Plaintiff Kristen McGonigal ("Plaintiff McGonigal") is, and at all relevant times, has been, an Illinois resident.

14.    From approximately May 2014 until February 4, 2020, Plaintiff McGonigal worked as a Financial Assistance Representative for the College of DuPage Office of Student Financial Assistance.

15.    During Plaintiff McGonigal's  approximately six years at COD, she received good performance reviews, and before reporting unlawful and unethical behavior occurring at COD, giving rise to this Complaint, she had no reason to believe she was in jeopardy of losing her job.

16.    Plaintiff McGonigal had a salary of $59,000 a year with full benefits including SURS retirement, with only four years remaining before the pension vested, health insurance, dental insurance, a 403(b) plan, free or reduced cost vehicle repairs, gym membership, and a two-thirds reduction in COD tuition for her and her dependents.

17.    Plaintiff McGonigal is, and at all relevant times, has been, an Illinois Resident.

18.    From approximately August 2016 until February 4, 2020, Plaintiff Vanessa Thede ("Plaintiff Thede") worked as a Financial Assistance Representative for the College of DuPage Office of Student Financial Assistance.

19.    During Plaintiff Thede's approximately four years with COD, she received good

performance reviews and, before reporting unlawful and unethical behavior occurring at COD, giving rise to this Complaint, she had no reason to believe she was in jeopardy of losing her job.

20.     Plaintiff Thede had a salary of $56,000 a year, with full benefits including SURS retirement, with only six years remaining for vesting, health insurance, dental insurance, 403(b), free or reduced cost vehicle repairs, gym membership, and a two-thirds reduction in COD tuition for her and her dependents.

21.     Defendant Board of Trustees of Community College District No. 502 ("Board"), is a body politic and corporate organized under the Illinois Public Community Colleges Act, 110 ILCS 805/1-1 *et seq.*, comprised of seven publicly elected trustees and one non-voting student trustee. Those trustees upon information and belief include Charles Bernstein, Annette Corrigan, Maureen Dunne, Christine Fenne, Heidi Holan, Dan Markwell, and Frank Napolitano. Board is the final authority over COD and is responsible for the development and adoption of COD's policies, oversight of the activities of COD, and exercises jurisdiction in all matters of COD and its mission. Board maintains its offices at 425 Fawell Boulevard, Glen Ellyn, Illinois.

22.     Defendant Board Member Charles Bernstein, was a member of Board at all relevant times.  Board Member Bernstein is a resident of Illinois.  Board Member Berstein is named individually and in his official capacity as a member of Defendant Board.

23.     Defendant Board Member Annette Corrigan, was a member of Defendant Board at all relevant times.  Board Member Corrigan is a resident of Illinois.  Board Member Corrigan is named individually and in her official capacity as a member of Board.

24.     Defendant Board Member Maureen Dunne, was a member of Board at all relevant times.   Board Member Dunne is a resident of Illinois.   Board Member Dunne is named individually and in her official capacity as a member of Board.

25.     Defendant Board Member Christine Fenne, was a member of Board at all relevant times.   Board Member Fenne is a resident of Illinois.   Board Member Fenne is named individually and in her official capacity as a member of Board.

26.     Defendant Board Member Heidi Holan, was a member of Defendant Board at all relevant times.  Board Member Holan is a resident of Illinois.  Board Member Holan is named individually and in her official capacity as a member of Board.

27.     Defendant Board Member Dan Markwell, was a member of Defendant Board at all relevant times.  Board Member Markwell is a resident of Illinois.  Board Member Markwell is named individually and in his official capacity as a member of Board.

28.     Defendant Board Member Frank Napolitano, was a member of Defendant Board at all relevant times.   Board Member Napolitano is a resident of Illinois.   Board Member Napolitano is named individually and in his official capacity as a member of Board.

29.     Defendant College of DuPage, is an Illinois Municipal Entity and public college organized pursuant to the Illinois Public Community Colleges Act, 110 ILCS 805/1-1 *et seq*., who, at all times relevant hereto, conducted business in DuPage County and who had its principal place of business at 425 Fawell Boulevard Glen Ellyn, DuPage County, Illinois.

30.     College of DuPage is a community college with an enrollment of over 28,000 students. It is the second largest provider of undergraduate education in Illinois and employs over 1,200 academic staff members.

## ADMINISTRATORS

31.     Dr. Brian Caputo ("Caputo") at all times relevant to this Complaint was the President of COD.

6

32. Ellen Roberts ("Roberts") at all times relevant to this Complaint was the Interim Vice President of Administrative Affairs for COD.

33. Dr. Mark Curtis-Chavez ("Curtis-Chavez") at all times relevant to this Complaint was the Provost at COD.

34. Dr. Diana Del Rosario ("Del Rosario") at all times relevant to this Complaint was the Assistant Provost for Student Affairs at the COD.

35. Laura Daly ("Daly") at all times relevant to this Compliant was the former Interim Director of the COD office of Student Financial Assistance from January 2019 to April 2020.

36. Lisa Schuller ("Schuller") at all times relevant to this Complaint was the former director of human resources at the College of DuPage from 2018 to January 2020.

37. James Martner ("Martner") at all times relevant to this Complaint was the Director of Compliance and Internal Auditor at the COD.

38. At all relevant times, the actions of the administration, management, and staff of COD, identified above were performed in their official capacity as employees and agents of COD.

## JURISDICTION AND VENUE

39. Jurisdiction is proper under 28 U.S.C. § 1331, which provides federal courts jurisdiction over all claims arising out of the Constitution, treaties and laws of the United States.

40. Jurisdiction over Plaintiffs' state law claims is proper under 28 U.S.C § 1367 as they arise out of the same set of facts and circumstances as Plaintiffs' federal law claims.

41. Venue is proper under 28 U.S.C. § 1391(b)(1) as a substantial part of the events giving rise to the Plaintiffs claim occurred in this judicial district.

## GENERAL ALLEGATIONS

**A. COD Engages in Unlawful Practices Related to Student Financial Aid Refunds.**

42.     COD is a community college located in Glen Ellyn Illinois, serving thousands of students each year.

43.     As a part of their providing post-secondary educational services, COD receives funds from the United States Department of Education as an eligible institution of higher education under the Higher Education Act of 1965, 20 U.S.C. § 1088.

44.      COD also receives funds for student loans to provide to eligible students, who complete a required level of credit hours. 20 U.S.C. §§ 1087(c) and (cc), 34 CFR § 162(e).

45.     These programs are run through the Office of Student Financial Assistance, which previously employed both Plaintiffs.

46.     In the event a student withdraws from an eligible institution of higher education, both the institution and the student are required to refund federal student loans, federal grants, and state monies for unearned financial aid. 20 U.S.C. § 1091(b) and 34 CFR § 66.162(e). This process is called a Withdrawal and Return of Title IV funds ("R2T4").

47.     The institution is required to make calculations and refund the federal government unearned HEA monies within 45 days of a student's withdrawal. 34 CFR § 668.162(e).

48.     The institution must send a notice of an overpayment or unearned funds to students within 30 days, advising that the money must be repaid in full within 45 days. 34 CFR § 668.22(h)(i) and (h)(ii).

49.     If a student is entitled to a tuition credit or refund after the start of a semester, it must be paid out within 14 days. 34 CFR § 668.164(h)(2)(i).

50.     If a student is entitled to a tuition credit or refund before the start of the semester,

8

it must be paid within 14 days after the start of the semester. 34 CFR § 668.164(h)(2)(ii).

51.  COD failed to return student's unearned loan funds to the Department of Education, and failed to send the Department of Education reimbursement funds COD received from students for unearned tuition funds.

52.  COD instructed its financial aid representatives to lie about the status and/or processing of refund checks to students, and to use a vague, prewritten phone script to cover up the Finance Office's illegal mishandling of the refund check process.

53.  Additionally, COD failed to release credit balances to students within the required 14-day time period and also instructed financial advisors to rely on a second vague script that misled students as to the date their refunds would be released. Plaintiffs knew of these procedures from February to September 2019, but refused to participate or lie to students about the status and/or processing of refund checks and tuition credits.

54.  Plaintiffs had previously learned about an audit/review from the U.S. Department of Education in January 2019 investigating COD's failure to properly update enrollment records per 34 CFR § 685.309, which, coupled with issues concerning refunds to students and the Department of Education, caused Plaintiffs to become very concerned about potential financial mismanagement and fraud at COD.

55.  On December 2, 2019 Plaintiffs and another employee, Naomi Bar, met with Martner, COD Director of Compliance and Internal Auditor, regarding concerns with the hiring process within the department. Martner informed Plaintiffs and Bar that they would be protected as whistleblowers. On December 16, 2019, Plaintiffs again met with Martner in reference to Plaintiff McGonigal's Ethics Complaint and of continued ethical concerns within the Finance and Financial Aid Offices.

56. Despite Plaintiffs alerting COD of ongoing practices that Plaintiffs reasonably believed to be illegal and/or unlawful, COD did not institute any change in its practices nor correct this blatant disregard for the law or the financial affairs of its students.

57. Plaintiffs received no information as to any investigations COD conducted as to this issue.

58. Meanwhile, students who had sent money to COD for repayment had their accounts sent to collections by the Department of Education.

59. Plaintiffs continued to bring up the financial aid issues, and at one point wrote to the Higher Learning Commission, the accrediting agency for COD, regarding their ongoing concerns with the ethics of COD administration, based on a history of mismanagement and Plaintiffs concerns for unlawful and unethical practices concerning student financial aid at COD. A copy of Plaintiffs September 18, 2019 letter to the Higher Learning Commission is attached as Exhibit D.

60. Plaintiffs also reported the misconduct to Daly, Interim Manager of the Office of Student Financial Assistance.

61. On or about October 24, 2019, Plaintiff McGonigal filed an ethics complaint against COD through its ethics hotline, EthicsPoint, for failing to release student refund tuition checks, wrongfully dropping students from classes, adding improper "Not Sufficient Funds Check Fees" to students' accounts, and failing to send unearned Title IV funds back to the United States Department of Education.

62. Due to Defendants' conduct, multiple families had their accounts sent to collections even though those students and their families had already paid COD for the allegedly unpaid balances.

63.     Plaintiffs remained concerned about COD's failure to properly return unearned funds, and raised the issue on numerous occasions.

**B. COD seeks a New Manager for the Office of Student Financial Assistance Over Reports of Harassment**.

64.     After Plaintiffs raised their concerns regarding COD's financial aid practices, the Office of Student Financial Assistance began seeking a new director for the office approximately between October and November of 2019.

65.     In 2018, Plaintiffs were among several anonymous staff members who had complained about previous managers in the Office of Student Financial Assistance.

66.     In November of 2019, Plaintiffs, like the rest of the office, learned that Zena Williams, a friend of Curtis-Chavez, and a prior consultant for the Student Financial Assistance Office, was among the four candidates being vetted for the Office Manager position.

67.     While acting as a consultant for COD, Zena Williams, said the financial aid staff had engaged in a coup and should all be terminated.

68.     Plaintiffs immediately filed an anonymous complaint and expressed their concerns via letter to Del Rosario, Vice Provost for Student Affairs, Curtis-Chavez, Provost, Caputo, COD President, as well as Martner, Director of Compliance and Internal Auditor. A copy of that letter is attached and emails to Del Rosario are attached hereto as Exhibit E.

69.     They also raised issues about an additional candidate, Carissa Davis, who had severe compliance and auditing issues while managing the Financial Aid Office at Morraine Valley Community College.

70.     Plaintiffs and other staff felt significantly intimidated and attempted to meet with COD administrators during the week of November 27, 2019 to address their concerns with the former manager, the new candidates, and the general impropriety of the new manager search,

which included Williams. On November 25, 2019, Plaintiffs gave Caputo's secretary Tracey Fry, a letter of concern regarding the ongoing ethical concerns in the Student of Financial Assistance Office.

71.     The next day, November 26, 2019, Caputo suggested Plaintiffs voice their concerns to Curtis-Chavez, Provost, and Del Rosario, Assistant Provost.

72.     On November 26, 2019 Curtis-Chavez scheduled an appointment with Plaintiffs, Diana Christopher, and Naomi Bar for 5:00 p.m.

73.     Plaintiffs, Diana Christopher, and Naomi Bar met with Curtis-Chavez for approximately thirty minutes and he told Plaintiffs to follow-up with Del Rosario.

74.     On December 2, 2019 at 9:00 a.m., Plaintiffs and Bar met with Martner, Plaintiffs and Bar told Martner they were fearful of losing their jobs after the letter sent to Caputo and their meeting with Curtis-Chavez. As a result, Martner filed Plaintiffs and Bar as whistleblowers and assured Plaintiffs and Bar they were protected and that he would investigate the concerns they raised. Martner told Plaintiffs he had written down Plaintiffs' concerns.

75.     After that initial meeting, Ms. Bar and Ms. Christopher no longer felt safe continuing to voice concerns.

76.      Plaintiffs then requested a meeting with Del Rosario on December 3, 2019 at 3:30 p.m. At the meeting, Plaintiffs voiced concerns with the hiring process and Del Rosario assured Plaintiffs the hiring process was being taken care of correctly.

77.     At 4:10 p.m., that same day Schuller, Director of Financial Aid at the time, notified the financial aid representatives that there would be a meeting with all of them the following day, December 4, 2019, to discuss the complaints regarding the hiring process.

78.     Upon information and belief, the meeting on December 4, 2019 was an attempt to

intimidate employees in the financial aid office and to learn the names of the employees who were complaining about the hiring process. As a result, this created a very hostile work environment, where Plaintiffs were in fear of losing their job for speaking out against the hiring process.

79.     Schuller was adamant to find the source of concern within the Office of Student Financial Assistance and went on a "witch hunt" as referenced by other co-workers in the Office of Student Financial Assistance. Schuller wanted names of employees associated with speaking out against the hiring process and other ethical concerns within the Office of Student Financial Assistance.

80.     On December 4, 2019, Plaintiffs filed an ethics complaint through EthicsPoint against Curtis-Chavez, Provost, Del Rosario, Vice Provost, and Schuller, Human Resources Director, and stated that they feared intimidation and retaliation for raising their concerns with the hiring process, which they did, in part because of Caputo's suggestion. Ultimately, between January 2019, and December 2019, Plaintiffs sent approximately 10 letters through EthicsPoint to alert COD about ethical concerns within the Finance Office and the Office of Student Financial Assistance.

81.     Board received a number of the letters sent through EthicsPoints because Plaintiffs directed a number of the letters to Board. In addition, the College of DuPage General Policy Manual of the Board of Trustees Policy No. 15-27 encourages staff, students, and all stakeholders to "disclose allegations of wrongdoing concerning the College" and states "The President will designate a senior administrator who will have overall responsibility for the maintenance and operation of this policy." It further states "Where the complaint involves the President, Treasurer, Controller, or other senior administrator, where the reporter is concerned

13

the President may possess a conflict of interest, the reporter may instead submit a report to the Chair of the Board of Trustees...[s]hould a complaint involve the president, and be received by the senior administrator, the senior administrator shall notify the Chair of the Board immediately upon receipt of the same." A true and correct copy of the Board Policy is attached as Exhibit F.

82. Plaintiffs submitted a letter directed to Board through EthicsPoint because there was a "conflict of interest" due to the fact Plaintiffs reported wrongdoing of senior administrators. However, Caputo, Del Rosario, Curtis-Chavez, and Schuller did not follow procedure and submit their report to the Chair of the Board of Trustees, notifying the Board of the conflict of interest and thus failing to adhere to COD's policies

**C. COD Improperly Fires Plaintiffs.**

83. Unhappy with Plaintiffs repeated attempts to correct COD'S unlawful and unethical conduct, COD set out to establish any other basis for its desire to fire Plaintiffs.

84. On December 6, 2019, both Plaintiff McGonigal and Plaintiff Thede used a paid sick day to take the day off.

85. Plaintiff McGonigal used her paid sick leave to take her son to a medical appointment. Plaintiff McGonigal knew about her son's medical appointment ahead of time and had planned to use the sick day ahead of time. As a result of the appointment her son was referred for further medical treatment for his condition.

86. Plaintiff Thede used her sick leave because she was unable to work due to suffering from a severe migraine headache that day; she informed her supervisor that morning that she would be using a sick day, which is permissible according to the Employee Handbook in place at that time. A true and correct copy of the Employee Handbook is attached as Exhibit G, *see* pp.12-13.

14

87.     Plaintiffs supervisors did not require Plaintiffs or other employees to provide documented proof for using their earned sick leave, if less than three days. According to the Employee Handbook, if sick leave is for less than three days, a supervisor may request a physicians' note with approval from Human Resources. Ex. G, pp. 12-13.

88.     COD did not request documentary proof nor raise any concerns regarding Plaintiffs' requests at that time because there was nothing wrong with Plaintiffs' use of their earned paid sick leave.

89.     Coincidentally, Plaintiffs attended a craft festival in Bartlett, Illinois on the evening of December 6, after work hours.

90.     Plaintiffs had planned to attend the craft festival because they had started a crafting hobby following their purchase of crafting equipment for one of their son's school performances.

91.     The craft festival began at 5:00 p.m. in nearby Bartlett, Illinois. Even if Plaintiffs had worked that day, they still could have made the craft show after working all day. Plaintiff's work hours ended at 4:00 that day. Bartlett Illinois is only approximately a 20 minute drive from COD.

92.     In fact it was common practice for Plaintiffs and their colleagues to leave work a little early to make personal appointments after work. In general, COD had afforded Plaintiffs and other employees of the Office of Student Financial Assistance relative flexibility in their work schedules, without comment or complaint.

93.     Plaintiffs had never been reprimanded for their use of sick leave or leaving work early in their time working for COD.

94.     Plaintiffs did not violate the terms of COD's Employee Handbook.

95.     Plaintiffs were not approached about their attendance of the craft festival until their termination

96.     On December 16, 2019, Plaintiffs met with Martner over their concerns with the hiring process for the manager of the Office of Student Financial Assistance, which caused intimidation and retaliation by Caputo, Curtis-Chavez, and Schuller. On January 6, 2020, Schuller resigned.

97.     After the December 16 meeting, COD decided to terminate Plaintiffs for their whistleblowing and began to search for pretexts to terminate Plaintiffs.

98.     On January 31, 2020, Plaintiffs received an email requesting a meeting with Del Rosario. Plaintiff Thede accepted the meeting because she was scared. Plaintiff McGonigal declined the meeting and let Del Rosario's secretary know via email that she did not feel comfortable meeting with her because she had an open retaliation claim against her.

99.     Plaintiffs were asked to meet with Del Rosario on January 30, 2020, and were given their recommendation for termination on January 31, 2020.

100.     Contrary to the stated, pre-textual reasons, COD terminated Plaintiffs for, firstly, refusing to engage in illegal conduct by lying to students and families about the status of payment for monies owed.

101.     COD's illegal conduct wrongfully caused numerous students to have their loan accounts sent to collections, improperly forced the Federal government to expend untold money in collections efforts, and illegally retained Federal Government funds for unearned tuition.

102.     COD also terminated Plaintiffs for reporting illegal, unlawful, and/or unethical practices in their office and the unethical and improper hiring process for the new manager of the Office of Student Financial Assistance.

103.    COD violated public policy by terminating Plaintiffs' employment for their refusal to engage in illegal conduct regarding the status of money owed to students, Plaintiffs' reports of harassment and conduct that was either illegal or reasonably believed to be illegal in the Office of Student Financial Assistance, and the hiring process for the manager of that office.

104.    Instead of identifying the true reason it fired Plaintiffs, COD claimed it fired Plaintiffs because Plaintiffs were running a side business, using work computers to upload data relating to their business, and falsifying their time records. *See* Ex. B.

105.    COD's stated reason for Plaintiffs' termination were pre-textual. This is evidenced by the fact that Plaintiffs and COD knew that multiple COD employees ran their own side hobbies during work hours and did so openly and notoriously, and stored information for their side hobbies at work or on work computers.

106.    Further, Plaintiffs hobby can only be generously referred to as a business. The "business" also was incapable of being operated on COD's premises because their hobby revolved around a craft making machine called a Cricut that was located at their homes. Although there was one incident in which Plaintiff McGonigal uploaded information on COD's shared computer drive, it was because she was unable to send the information via her private email outside of work hours, and the file was immediately deleted. Multiple employees kept documentation relating to the shared drive at their desks.

107.    Multiple employees also received packages and deliveries at COD offices, took orders and performed side businesses and hobby activities on their computer.

108.    These businesses and hobby activities were manifold, including coordinating choreography for YouTube videos, selling Mary Kay makeup, and scheduling flights for military personnel.

109.    Again, Plaintiffs' hobby was no different than those conducted by other employees in the Office of Student Financial Assistance that COD was aware of.

110.    Additionally, COD had never mentioned their displeasure with Plaintiffs work, their hobby, or any other violations prior to their termination.

111.    COD never utilized any of the disciplinary measures in the Employee Handbook, including, verbal warnings, written warnings or suspensions. Ex. G, pp. 24-26.

112.    The Employee Handbook does state that an employee may be immediately terminated if they have been found to have falsified an employment record among other violations. Ex. G, pp. 24-26. However, Plaintiffs never falsified employment records.

113.    On information and belief, COD did not fire any other employees for these known side businesses or minor infractions.

114.    COD did not present any evidence that Plaintiffs falsified their time records or had misused their paid sick leave.

115.    Plaintiffs were not provided with any warnings, verbal or written, concerning violations of COD procedures before their termination.

116.    Plaintiffs did not falsify their time records and followed the necessary protocol for using their paid sick leave.

117.    Further demonstrating the pre-textual nature of the stated reasons for Plaintiffs termination, is the fact that on February 3, 2020, COD and Board agreed to contract with College Aid Services to help staff the Office of Student Financial Aid.

118.    During the February 20, 2020 Board meeting, Plaintiffs' termination was not listed on the Board agenda and was not discussed in the recorded meeting minutes. Defendant Board is required to discuss any change in employment at COD and as a result failed to follow

proper procedure concerning employment changes within COD.

119.    Instead of following the established progressive discipline system established in the Employee Handbook to correct Plaintiffs minor infractions, and despite knowing the office was understaffed, COD still went ahead and fired Plaintiffs.

120.    There was another—illegal—reason: Plaintiffs repeatedly and consistently blew the whistle on learning of COD's illegal, unlawful, and/or unethical conduct and refused to engage in those actions.

### COUNT I: WRONGFUL DISCHARGE
**Pursuant to Illinois Common Law**
**(As to all named defendants)**

121.    Plaintiffs reallege and incorporate the allegations of Paragraphs 1-120 as if set forth fully herein.

122.    The reasons COD terminated Plaintiffs were not the reasons stated in its recommendation for termination issued to Plaintiffs.

123.    Instead, COD fired Plaintiffs for refusing to engage in illegal conduct COD was engaging in and for reporting that conduct to COD's ethics hotline, ethics personnel and to other authorities.

124.    COD also terminated Plaintiffs for reporting unethical and improper management of the Office of Student Financial Assistance and reporting the unethical and improper hiring process for a new manager of the Office of Student Financial Assistance.

125.    Plaintiffs were fired for their good faith attempts to report unlawful conduct.

126.    COD and the named defendants' reasons for firing Plaintiffs violate clearly mandated public policy in that it strikes at the heart of Plaintiffs' right to continue their employment without being forced or otherwise coerced into committing unlawful acts or without

being subjected to harassment in the workplace.

127.    Therefore, COD and the named defendants' wrongfully discharged Plaintiffs.

128.    Had Plaintiffs not repeatedly and consistently refused to engage in illegal conduct and report illegal, unlawful, and/or unethical conduct to COD ethics hotline and ethics personnel, COD and the named defendants would not have terminated Plaintiffs.

## COUNT II: WRONGFUL TERMINATION
### Pursuant to the Illinois Whistleblower Act, 745 ILCS 174/20
### (As to all named Defendants)

129.    Plaintiffs reallege and incorporate the allegations of Paragraphs 1-128 as if set forth fully herein.

130.    Plaintiffs request this Court enter such orders or judgments necessary to restore Plaintiffs any money owed for the wrongful discharged and all damages suffered, including lost wages, back pay, with interest, attorney's fees and costs for pursing this claim pursuant to 740 ILCS 174/30.

131.    Plaintiffs reported the unlawful conduct of COD internally and to the Higher Learning Commission, the accrediting agency for COD and other colleges.

132.    Plaintiffs refused to engage in the unlawful activity as instructed by COD.

133.    Through their firsthand knowledge of the practices of the Office of Student Financial Assistance, Plaintiffs had reasonable cause to believe that these practices violated state or federal law.

134.    Because Plaintiffs refused to participate in COD's unlawful conduct, COD retaliated against Plaintiffs by terminating their employment with the College.

135.    As a result of COD terminating their employment, Plaintiffs suffered damage in the form of lost income and wages, healthcare costs and additional benefits, back pay, and the

costs of securing new jobs.

136.    Plaintiffs are entitled to all damages suffered, including lost wages, back pay, with interest, attorney's fees and costs for pursing this claim pursuant to 740 ILCS 174/30.

## COUNT III: RETALIATION UNDER THE FIRST AMENDMENT AND FOURTEENTH AMENDMENTS
### Pursuant to 42 U.S.C. § 1983
### (COD and Board)

137.    Plaintiffs reallege and reincorporate the allegations of Paragraphs 1-136 as if set forth herein.

138.    Plaintiffs voiced a matter of public concern when they complained of the practices of COD's failure to refund student loan money and failed to warn students and their families about their duty to refund the money.

139.    Plaintiffs also voiced a matter of public concern when they complained about the harassment and mismanagement of the hiring process for a new manager for the Office of Student Financial Assistance.

140.    Defendants had specific knowledge of Plaintiffs' ethics complaint, but did not follow-up on any concerns raised by them.

141.    Defendants willfully ratified the firing of Plaintiffs by willfully not investigating claims raised by Plaintiffs.

142.    By firing Plaintiffs COD, Defendants engaged in activity that would deter Plaintiffs' speech.

143.    Plaintiffs' complaints regarding the practices of the Office of Student Financial Assistance were at least a motivating factor in the decisions to fire Plaintiffs, if not the sole reason.

144.    Plaintiffs' interests in acting as citizens of the United States and the State of Illinois, and in reporting the actions of Defendants described above, support their claim to constitutional protection of their First Amendment freedom of speech.

145.    Plaintiffs were also terminated for writing a letter to the Higher Learning Commission, an accrediting agency, describing numerous issues relating to staffing, mismanagement, and potentially wrong or illegal procedures at the Office of Student Financial Assistance at COD.

146.    As a result of the previously mentioned acts, Defendants, acting under the color of state law, have deprived and continue to deprive Plaintiffs' of their rights under the First Amendment of the United States Constitution and the Illinois Constitution in violation of 28 U.S.C. 1983.

147.    These actions do not arise from Plaintiffs' job duties.

148.    As a result of COD terminating their employment, Plaintiffs suffered damage in the form of lost income and wages, healthcare costs and additional benefits, back pay, and the costs of securing new jobs.

## COUNT IV: BREACH OF CONTRACT
### (As to COD and Board)

149.    Plaintiffs reallege and incorporate the allegations of Paragraphs 1-148 as if set forth fully herein.

150.    Plaintiffs signed the Employee Guidebook & Board Policies Acknowledgement.

151.    COD and Board failed to follow proper procedure per the Employee Guidebook and thus terminated Plaintiffs in violation of the terms of the Employee Guidebook which was a valid contract as evidenced by Plaintiff McGonagall's signed Employee Guidebook & Board Policies Acknowledgement. A true and correct copy of the Acknowledgment is attached as

Exhibit H.

### COUNT V: DUE PROCESS VIOLATION: EMPLOYMENT INTEREST
**Pursuant to the Fourteenth Amendment of United States Constitution**
**(As to COD and Board)**

152.     Plaintiffs reallege and incorporate the allegations of Paragraphs 1-151 as if set forth fully herein.

153.     Plaintiffs were regular, classified employees according to Board Policy 15-385. Ex. G, p.5 (Employee Handbook).

154.     A regular employee is hired with the expectation of continued employment subject to satisfactory performance. Ex. G, p. 5.

155.     Pursuant to the Employee Handbook, Plaintiffs have the right to a pre-termination hearing with the appropriate Vice President. Ex. G, p. 25.

156.     Plaintiffs were not provided with a pre-termination hearing, but instead were told they could appeal the recommendation for termination with Ellen Roberts within 2 working days by email.

157.     They did so, and within less than 24 hours, their appeals were denied. *See* Ex. B and C.

158.     COD and Board violated Plaintiffs' due process rights to a pre-termination hearing as stated in the Employee Handbook.

159.     Under the Fourteenth Amendment to the United States Constitution, Plaintiffs have an interest in continued employment that cannot be terminated without proper due process, including a pre-termination hearing as stipulated by the Employee Handbook.

160.     The termination of Plaintiffs without a pre-termination hearing and instead a post recommendation termination appeal by letter, which was denied within less than 24 hours is not

a valid exercise of due process.

161. Defendants' actions in terminating Plaintiffs without a pre-termination hearing and instead by letter were arbitrary and capricious, and done to maintain their interests.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A.  award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs are entitled;

B.  award pre-judgment and post-judgment interest on such monetary relief;

C.  award reasonable attorneys' fees and costs; and

D.  grant such further relief that this Court deems appropriate.

## JURY DEMAND

Plaintiffs hereby request a trial by jury on all issues so triable.

Dated: February 1, 2021

Respectfully submitted,

KRISTEN MCGONGIGAL and
VANESSA THEDE

By:     */s/ Thomas G. Gardiner*
One of Plaintiffs' Attorneys

Thomas G. Gardiner
John D. Scheflow
GARDINER KOCH WEISBERG & WRONA
Attorney ID:
53 W. Jackson Blvd., Suite 950
Chicago, Illinois 60604
312.362.0000 (phone)
312.362.0440 (fax)
tgardiner@gkwwlaw.com
jscheflow@gkwwlaw.com